## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FRANCIS GURULE,

       Plaintiff,

vs.                                                                              No.  03cv1443 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Gurule's) Motion to Reverse or Remand **[Doc. No. 12]**, filed June 10, 2004, and fully briefed on September 1, 2004.  On February 7, 2003, the Commissioner of Social Security issued a final decision denying Gurule's claim for supplemental security income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

## I.  Factual and Procedural Background

Gurule, now forty-six years old, filed her application for supplemental security income benefits on September 12, 2001, alleging disability since July 20, 2000, due to recurring meningitis, diabetic retinopathy, post traumatic stress disorder, and mental illness.  Tr. 16. Gurule has a high school education and past relevant work as an agricultural worker, housekeeper, and home caregiver.  On February 7, 2003, the ALJ denied benefits, finding Gurule had severe impairments of diabetes mellitus, hypertension, major depression, low back pain, and

post traumatic stress disorder.  However, the ALJ found these impairments did not meet or

medically equal one of the impairments listed in Appendix I, Subpart P, Regulations No. 4.  Tr.

16.  Specifically, the ALJ reviewed Listings 1.04, 4.03, 9.08, 12.04, and 12.06.  The ALJ further

found Gurule retained the residual functional capacity (RFC) "to lift and carry 20 pounds

occasionally, lift and carry 10 pounds frequently, stand and/or walk with normal breaks for 6

hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday with occasional use of

all postural movements, performing simple, repetitive non-public work with reduced strength

level."  Tr. 20-21.  Finally, the ALJ found Gurule was not credible.  Tr. 18.  Gurule filed a

Request for Review of the decision by the Appeals Council.  On June 2, 2003, the Appeals

Council denied Gurule's request for review of the ALJ's decision.  Hence, the decision of the ALJ

became the final decision of the Commissioner for judicial review purposes.  Gurule seeks judicial

review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

2

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III. Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Gurule makes the following arguments: (1) the ALJ failed to evaluate her obesity to determine whether or not her obesity constituted a disabling impairment as required by Social Security Rulings 96-3p and 02-01p; (2) the ALJ failed to address evidence in making an assessment of her mental residual capacity pursuant to Social Security Rulings 85-16 and 96-8p, and Tenth Circuit case law; and (3) the ALJ's reliance upon the testimony of the vocational expert cannot constitute substantial evidence when the ALJ failed to properly assess her limitations at step four of the sequential evaluation process and when he ignored evidence.

## A.  Obesity as a Disabling Impairment Pursuant to Social Security Ruling 02-01p

Gurule contends the ALJ failed to evaluate her obesity to determine whether or not her obesity constituted a disabling impairment as required by Social Security Rulings 96-3p and 02-01p.  *See*, SSR 96-3p, 1996 WL 374181 (1996) and SSR 02-01p, 2000 WL 628049 (2002). Social Security Ruling 96-3p clarifies the agency's policy for considering allegations of pain or other symptoms in determining whether a claimant has a severe medically determinable physical or mental impairment(s).  SSR 96-3p, 1996 WL 374181, at *1 (1996) Social Security Ruling 02-01p provides guidance on the agency's policy concerning the evaluation of obesity in disability claims. SSR 02-01p, 2000 WL 628049, at *1 (2002).

In his decision, the ALJ noted:

Further, the claimant testified that she has back problems that prevent her from working. She contends that she is unable to work because of back problems and a mental condtion. She has also indicated that she is unable to work because of recurring bouts of spinal meningitis but there is no evidence of any active meningitis. The medical evidence reveals that she has had four occurrences of aseptic meningitis but the claimant is feeling well and there is no current evidence of functional loss or limitation due to meningitis (See Exhibit 11F/8). In addition, there is evidence of slight disc space narrowing at L4-5 with marginal spurring and mild degenerative disc disease of the lumbar spine (Exhibit 10F; 8F/3; 4F/23). Further, when the consultative physician evaluated the claimant for disability, he noted that her complaints were in excess of the objective findings. <u>Dr. Toner believed that the claimant's main reason for her decreased range of motion of her hips and lumbar spine was due to her obesity (Exhibit 8F/3). Dr. Toner noted that he had no knowledge of any back disorder that would interfere with activity that would be considered normal for an individual of the identical age, size, and gender. In his evaluation, he noted no evidence of any radiculopathy.</u>

Tr. 18-19. Thus, the ALJ relied on Dr. Toner's evaluation in his RFC determination. Dr. Toner's evaluation acknowledged and addressed Gurule's obesity. Dr. Toner, an agency consultant, examined Gurule and found her obesity was the main reason for her decreased motion of her hips and lumbar spine. Tr. 313. However, although Dr. Toner found Gurule's obesity affected her range of motion, nonetheless, he found it did not preclude her from working. On February 28, 2002, Dr. Toner completed a Medical Assessment Of Ability To Do Work-Related Activities and found Gurule was not limited in her ability to lift/carry, stand/walk, sit, reach, handle objects, and manipulate with her hands/fingers. Tr. 317-318. Therefore, Gurule's claim that the ALJ failed to evaluate her obesity fails.

**B. ALJ's Failure to Address Evidence in Determining Residual Functional Capacity (RFC)**

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion. See SSR 96-8p, 1996 WL 374184, at *7. The ALJ must "discuss the individual's

ability to perform sustained work activities in an ordinary work setting on a regular and

continuing basis . . . and describe the maximum amount of each work-related activity the

individual can perform based on the evidence available in the case record." *Id.* The ALJ must

also explain how "any material inconsistencies or ambiguities in the case record were considered

and resolved." *Id.* "The RFC assessment must include a discussion of why reported symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent

with the medical or other evidence." *Id.*

Gurule contends the ALJ failed to discuss probative evidence in determining her RFC.

The Court agrees.  On February 2, 2002, Gurule was evaluated at University Hospital Neurology

(Adult) Clinic for recurrent aseptic meningitis.  Tr. 206.  In August 2001, Gurule had been

admitted to University Hospital with aseptic meningitis.  Extensive diagnostic testing was done,

including an MRI of her brain.  The MRI showed some white matter changes "but not clearly

diagnostic." *Id.*  Dr. Madeleine Grigg-Damberger recommended Gurule see an immunologist to

rule out an immune deficiency.

On May 3, 2002, Gurule went to the University Hospital Rheumatology Clinic for an

evaluation of immunodeficiency.  Tr. 208.  Dr. Wilmer L. Sibbitt and Dr. Chara J. Solich

evaluated Gurule.  After an extensive work-up, they opined:

> The patient has a history of repeated aseptic meningitis x four with the last episode being in
> September of 2001.  At that time the Neurology Service was concerned of immunodeficiency
> and initiated a workup with a follow up in our clinic as stated above.  At that appointment in
> March, we did not feel that the patient had immunodeficiency based on her history and
> laboratory data.  It was felt that she would more than likely be suffering from bacterial
> infections and the aseptic miningitis may not represent a true immunodeficiency, however, at
> that appointment there was concern aobut the patient's complaint of low back pain as well as
> possible radicular symptoms.  As a result, plain films as well as an MRI and laboratory date
> was ordered with a follow up today.

** ** ** ** ** ** **

> The patient is currently in the process of filing for mental disability.  Given the patient's history as well as the <u>central nervous system abnormalities that have been noted on imaging as well as serology and CSF studies</u> **with resultant functional limitations**, we feel that the **patient is not employable** and that she would benefit from disability benefits.  This was discussed with the patient, and a copy of this note will go to the patient at home.

Tr. 210.  The ALJ failed to discuss this opinion in his decision.  The Court cannot discern whether the ALJ was aware of this evaluation or just failed to give his reason(s) for disregarding the physicians' opinion of disability.  On remand, if the ALJ decides to disregard the physicians' opinion of disability, he must set forth specific, legitimate reasons for doing so.  *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).   The ALJ should consult with Dr. Sibbitt and Dr. Solich regarding what "resultant functional limitations" they are referring to in their May 3, 2002 evaluation and have them submit a Medical Assessment Of Ability To Do Work-Related Activities (Physical).

A judgment in accordance with this Memorandum Opinion and Order will be entered.


_____

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**